**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ILLINOIS TAMALE COMPANY, INC. D/B/A ILTACO, | |
|       Plaintiff, | Civil Action No. 24-cv-05210 |
| v. | Judge Jeremy C. Daniel |
| LC TRADEMARKS, INC. and LITTLE CAESAR ENTERPRISES, INC., | |
|       Defendants. | |

**LC TRADEMARKS, INC.'S AND LITTLE CAESAR ENTERPRISES, INC.'S
RESPONSE IN OPPOSITION TO ILLINOIS TAMALE COMPANY, INC. D/B/A
ILTACO'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants LC Trademarks, Inc. and Little Caesar Enterprises, Inc. (collectively "Defendants" or "Little Caesars") respectfully submit this response in opposition to the motion for a preliminary injunction ("Motion") filed by Plaintiff Illinois Tamale Company, Inc. d/b/a Iltaco ("Plaintiff"). Plaintiff's claims are fatally flawed for the following reasons: (1) the terms "Pizza Puff(s)" and "Puff(s)" are generic, and therefore cannot be protected as trademarks, (2) even if "Pizza Puff(s)" and "Puff(s)" were protectable as trademarks, there is no infringement because Little Caesar's use of the trademark CRAZY PUFFS and the phrase "4 Hand-Held Pizza Puffs" does not give rise to any likelihood of consumer confusion, and (3) Little Caesars' use of the phrase "4 Hand-Held Pizza Puffs" qualifies as fair use under the Lanham Act, because the phrase is used in good faith in a non-trademark manner to denote what the product is. As such, Plaintiff has no

1

likelihood of success on the merits of its claims. Further, as discussed below, the remaining preliminary injunction factors likewise weigh strongly against the granting of such relief.[1]

# I. BACKGROUND FACTS

## A. Dictionaries Define "Pizza Puff(s)" and "Puff(s)" as a Generic Name for a Type or Kind of Food Product

Numerous dictionaries and other sources define the terms "Pizza Puff(s)" and "Puff(s)" generically as a kind or type of food item. For example, "pizza puff" is defined as "[a] dough pouch filled with the ingredients of a pizza, such as cheese, pizza sauce, sausage, and pepperoni, and usually deep fried," while "puff" is defined as "[a] light round hollow pastry" or "[a] light pastry case, typically one made of puff pastry, containing a sweet or savory filling." Declaration of Greg Hamilton ("Hamilton Decl."), ¶¶13 and 17, Exs. E and I; Declaration of Laura K. Russell ("Russell Decl."), Exs. E and F. The Seventh Circuit recognized that, if a term is defined in a dictionary, it is "powerful evidence that the term [is] generic." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996).

## B. Menus and Third Party Uses of the Terms "Pizza Puffs" and "Puff" Generically

Numerous restaurants use the terms "pizza puff(s)" and "puff(s)" on their menus as the generic name of a type or kind of food item that can be ordered. Restaurant patrons encounter these generic uses of terms "pizza puff(s)" and "puff(s)" in close proximity to other generic food items that are listed, such as onion rings, chicken tenders, and burritos. Hamilton Decl. ¶¶15 and 19, Exs. H and K; Russell Decl., Exs. A and B. In listing "pizza puff(s)" and "puff(s)" as a food item among other generic food and snack items, these restaurant menus make clear that the terms

---

[1] The record contains substantial evidence showing that Plaintiff's claims lack merit for the reasons outlined above. In particular, Little Caesars is submitting herewith the Declaration of Greg Hamilton and related exhibits; the Declaration of Laura K. Russell and related exhibits; the Declaration of Jeff Handelman and related exhibits; and the Declaration of Hal Poret and related exhibits; and the Declaration of Ted Davis and related exhibits. These materials will be cited to in the following discussion.

"pizza puff(s)" and "puff(s)" are used as generic terms for a kind of food or snack. *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1159 (7th Cir. 1996).

### C. U.S. Patent and Trademark Office Allows Using the Generic Terms "Pizza Puffs" and "Puffs" in Identifications of Goods and Services

Under the rules of the U.S. Patent and Trademark Office ("USPTO"), a trademark application must include a list of the particular goods or services on or in connection with which the applicant uses or intends to use the mark. 37 C.F.R. §2.32(a)(6). The USPTO has allowed various third-party trademark applications and registrations to use "pizza puff(s)" and "puff(s)" as generic terms in their identifications of goods and services to denote the type of food items with which the third-party mark is used. Hamilton Decl. ¶¶14 and 18, Exs. F and J. This generic use by the government agency responsible for trademarks strongly supports the finding that the terms at issue, namely, "pizza puff(s)" and "puff(s)," are generic as applied to the relevant goods and therefore are not entitled to trademark protection.

### D. Plaintiff Itself Uses the Terms "Pizza Puffs" and "Puff" Generically

Plaintiff itself also uses the terms "pizza puff(s)" and "puff(s)" in a generic manner, another factor that strongly supports a finding of genericness. For example, there are generic references on Plaintiff's packaging and its own web site, including in the following cooking instructions that are provided on the site (*see* Hamilton Decl. ¶21, Ex. M):

> **Deep Fry**: Bring fryer oil to 375˚ and cook puff for approx.. 6-8 min, until golden brown. The puff will float when done.
> **Oven**: Brush both sides of the puff lightly with oil to prevent sticking. Convection: 425˚ for approx. 12-15 min. Conventional: 450˚ for approx. 15-17 min.

As shown in the above examples, Plaintiff itself uses the term "puff" in a generic manner to refer to the food item being cooked.

### E. Survey Evidence Demonstrates That the Significant Majority of Relevant Consumers Believe that "Pizza Puff" and "Puff" are Generic Terms

Consumer surveys are also accorded significant weight on the issue of whether a term is generic, because they provide direct evidence of consumer perception. The preferred survey methodology for assessing genericness is the "*Teflon*" survey design, named for the genericness survey endorsed in the seminal *Teflon* case, *E. I. Du Pont de Nemours & Co. v. Yoshida International, Inc.*, 393 F. Supp. 502 (E.D.N.Y. 1975). In a *Teflon* survey, the respondents are trained regarding the difference between a brand name and a common or generic name and then tested to ensure that they understand the distinction. Respondents are then shown a series of names related to the facts of the case and for each name are asked if they believe the name is a brand name (i.e., trademark) or a common name (i.e., generic), if they know. Under the Lanham Act, the test for determining whether a term is generic is "the primary significance" of the term to the relevant public. Lanham Act §14(3), 15 U.S.C. §1064(3). Thus, if more than 50% of the respondents believe that the term in question is a generic term, rather than a brand name, this supports a finding of genericness.[2] Hal Poret, a nationally recognized consumer survey expert, conducted a *Teflon* survey to determine the primary significance of the terms "Pizza Puff" and "Puff" to relevant consumers. The survey results show that the large majority of consumers of dough-based entrees or snacks filled with cheese, meats, and/or vegetables perceive "pizza puff" (83.3%) and "puff" (80.3%) to be common/generic terms, whereas only a small minority perceive

---

[2] *See Home Décor Center, Inc. v. Google, Inc.*, No. CV 12-5706-GW (SHx), 2013 WL 10858861, at *5 (C.D. Cal. May 9, 2013) (finding the phrase "Home Decor Center" generic when "TEFLON" genericness survey results showed that 79.6% of the relevant consumer group viewed the phrase as a generic description of a product category or type of store); *Windsurfing Int'l, Inc. v. Fred Ostermann GMBH*, 613 F. Supp. 933, 959 (S.D.N.Y. 1985), *aff'd in part, rev'd in part*, 782 F.2d 995 (Fed. Cir. 1986) (finding "windsurfer" generic after 61.4% of survey respondents recognized the term as the name of a type of product rather than a brand); *Intel Corp. v. Advanced Micro Devices, Inc.*, 756 F. Supp. 1292, 1297 (N.D. Cal. 1991) (finding "386" generic for microprocessors after 72% of survey respondents expressed belief that it was generic); *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004) ("beerman" generic after recognized as a common name by 75.9% of survey respondents).

"pizza puff" (12.7%) and "puff" (14.7%) to be brand names. This shows that the primary significance of the terms "pizza puff" and "puff" are generic in the context of dough-based entrees or snacks filled with cheese, meats, and/or vegetables, not as brands. *See* Declaration of Hal Poret and related exhibits.

### F. There Is No Likelihood of Confusion Arising from Little Caesars' Use of the CRAZY PUFFS Mark

Plaintiff claims there is a likelihood of confusion between its alleged marks Pizza Puffs and Puff and Little Caesars' mark CRAZY PUFF. However, as discussed more fully below, the clear differences between the CRAZY PUFFS mark and plaintiff's claimed marks, as well as the contexts in which the marks are used, preclude any likelihood of confusion. Indeed, the USPTO approved the CRAZY PUFFS application for registration, finding no likelihood of confusion with any prior registrations or applications of any third parties including Plaintiff. *See* Declaration of Ted Davis and related exhibits. In view of the USPTO's finding of no likelihood of confusion, Little Caesars now owns a U.S. registration for the CRAZY PUFFS mark. The USPTO required Little Caesars to disclaim the term "Puffs" in Little Caesars' registration, meaning that Little Caesars does not claim any rights in that term.

### G. The Phrase "4 Hand-Held Pizza Puffs" Is Non-Trademark, Fair Use

Plaintiff also claims that Little Caesars' use of the phrase "4 Hand-Held Pizza Puffs" infringes Plaintiff's alleged rights. However, Little Caesars uses the phrase "4 Hand-Held Pizza Puffs" in a subordinate, non-trademark manner in good faith to denote the type or kind product being sold, and not as an indication of source. As such, use of the phrase "4 Hand-Held Pizza Puffs" is permitted as fair use under Section 33(b)(4) of the Lanham Act, 15 USC. § 1115(b)(4), which is an affirmative defense to a trademark infringement claim.

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018). Such relief is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it" and "never awarded as a matter of right." *Valencia*, 883 F.3d at 965. In the present case, Plaintiff has failed to satisfy one, much less all four, of the factors needed to justify preliminary injunctive relief.

## III. ARGUMENT

### A. Plaintiff Has No Likelihood of Success on the Merits

To establish a prima facie case of trademark infringement, false designation of origin or unfair competition, a plaintiff must show that: (1) the plaintiff's marks are protectable and (2) the defendant's use of its trademarks is likely to cause customers to be confused as to the origin of the products. *See, e.g., SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). Trademark claims under Illinois law are analyzed under the same legal standard as the Lanham Act. *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir. 1982); *Long Grove Invs., LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1198 (N.D. Ill. 2019). Plaintiff cannot establish either element of its infringement claim.

#### 1. Plaintiff's Asserted Designations Are Generic and Unprotectable

Whether a trademark is entitled to protection depends upon where it falls upon a spectrum of increasing distinctiveness ranging from (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722,

727 (7th Cir. 1998). A generic term is one that is commonly used to name or designate a kind of goods, and is not entitled to trademark protection under any circumstances.[3] "A descriptive mark ... is one that merely describes the ingredients, qualities, or characteristics of an article of trade or a service." *Mil-Mar Shoe*, 75 F.3d at 1157, (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983)). Descriptive terms are only protectable where the holder can establish that the mark has acquired secondary meaning. *Id.* Terms that are either suggestive, arbitrary or fanciful are automatically entitled to protection because they are inherently distinctive. *Platinum*, 149 F.3d at 727.

Courts routinely accept the following types of evidence in support of a finding that a term is generic: (1) dictionary definitions; (2) the plaintiff's own generic use of the term; (3) generic uses of the term in the relevant industry; (4) media usage of the term; (5) use of the term by government agencies; and (6) survey evidence. *See, e.g.*, *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986); *Mil-Mar Shoe*, 75 F.3d at 1158-60; *see generally Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F.Supp. 2d 789 (N.D. Ill. 2007).

In the present case, substantial evidence establishes that Plaintiff's asserted marks "Pizza Puff(s)" and "Puff(s)" are generic terms for the goods in question and therefore not entitled to trademark protection. As discussed above, this evidence includes the following: (1) dictionary definitions of the terms as generic food items, (2) restaurant menus using the terms generically to refer to food items that can be ordered, (3) USPTO acceptance of the terms to denote generic food items in the identification of goods in applications and registrations, (4) Plaintiff's own generic

---

[3] This is true even in cases where the term acquires a secondary meaning (where it becomes identified with a particular source through extensive advertising and sales). When a term is generic, "protection as a trademark is categorically precluded." Mil-Mar Shoe, 75 F.3d at 1157. It is possible for a product to have multiple different generic names. For example, a car might also be called a vehicle or an automobile. Each such generic name is incapable of trademark protection. *Nat'l NonWovens, Inc. v. Consumer Prod. Enterprises, Inc.*, 78 U.S.P.Q.2d 1526 (D. Mass. 2005). *See also Nat'l Conf. of Bar Examiners v. Multistate Legal Stud., Inc.*, 692 F.2d 478 (7th Cir. 1982).

use of the terms, and (5) consumer survey evidence showing that the vast majority of consumers – the more than 80% – perceive the terms as generic in the context of dough-based entrees or snacks filled with cheese, meats, and/or vegetables, not as brands.

Plaintiff asserts that its alleged marks are valid because they are registered. Dkt. 2 at 7. This argument is unavailing. The registrations for "Pizza Puffs" and "Puff" merely create a rebuttable presumption of validity of the asserted marks. As Judge Kendall aptly explained, the presumption of validity can be rebutted on the basis of evidence showing that the registered mark is invalid: "Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but this presumption 'evaporates as soon as evidence of invalidity is presented.'" *Georgia-Pac. Consumer Prod. LP v. Kimberly-Clark Corp.*, 749 F. Supp. 2d 787, 795 (N.D. Ill. 2010) (Kendall, J.), *aff'd*, 647 F.3d 723 (7th Cir. 2011) (quoting *Door Sys. Inc.,* 83 F.3d at 172). The substantial evidence of genericness in the present case is more than sufficient to rebut the presumption of validity afforded by the trademark registrations. *See Liquid Controls*, 802 F.2d at 941 (affirming the finding on summary judgment that the federally registered "Liquid Controls" mark is generic); *Hickory Farms*, 500 F. Supp. 2d at 796 (finding on summary judgment that the federally registered "Beef Stick" mark is generic); *Mil-Mar Shoe,* 75 F.3d at 1153 (affirming the finding on summary judgment that "Warehouse Shoes" is generic).

Plaintiff's claim that it has a "family of marks" in its Puff marks is baseless. Dkt. 2 at 8. A family of marks cannot exist where, as here, the alleged distinguishing feature of the marks (i.e., "Puff") is a common term that is widely used as a generic name for the goods in question. As Judge Shadur explained in a case affirmed by the Seventh Circuit, "It is still necessary to prove that the 'family' feature is arbitrary and distinctive, not just descriptive or highly suggestive or commonly used in the trade." *Spraying Sys. Co. v. Delavan, Inc.*, 762 F.Supp. 772, 780 n.8 (N.D.

Ill. 1991), *aff'd*, 975 F.2d 387 (7th Cir. 1992) (rejecting family of marks claim based on a common term).

Further, because the registration of "Puff" is not incontestable, it is subject to cancellation if the term "Puff" is either generic *or* merely descriptive and without secondary meaning. A term is merely descriptive if it specifically describes a characteristic, feature, or ingredient of a product. *Liquid Controls*, 802 F.2d at 936. If the Court determines that the term "Puff" is not generic, the evidence unquestionably demonstrates that the term merely describes a characteristic or feature of Plaintiff's goods and is without secondary meaning. As such, the registration of "Puff" and Plaintiff's other registrations that are not incontestable are subject to cancellation on this alternative basis.[4]

## 2. Plaintiff Has Not Established any Likelihood of Confusion

Because Plaintiff's alleged marks are not entitled to protection, the Court need not even reach the question of likelihood of confusion. Nevertheless, the evidence also demonstrates that there is no likelihood of confusion – furnishing an independent reason why Plaintiff has no likelihood of success on the merits of its claims. The lack of any likelihood of confusion defeats both a traditional claim of forward confusion, and a claim of reverse confusion. *See, e.g.*, *Aliign Activation Wear, LLC v. Lululemon Athletica Canada, Inc.*, 2022 WL 3210698 (9th Cir. 2022); *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 493–94 (S.D.N.Y. 2004); *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 1003 (C.D. Cal. 2002). When evaluating a likelihood of confusion, the Court considers seven factors: "(1) similarity between the marks in

---

[4] These registrations are listed here: Registration No. 6,716,615 ("Puff"), Registration No. 5,958,486 ("Reuben Puff"), Registration No. 5,958,485 ("Buffalo Chicken Puff"), Registration No. 5,958,484 ("Bacon Breakfast Puff"), and Registration No. 5,958,483 ("Pulled Pork BBQ Puff"). If they are not generic, these marks are merely descriptive under Lanham Act Section 2(e)(1) and without secondary meaning as applied to the goods in the subject registrations. These designations lack secondary meaning and are merely descriptive in that they immediately describe a type, kind, quality, characteristic, or feature of the goods. As such, these designations are not entitled to trademark protection on this ground as well. See Lanham Act §§ 2(e)(1), 14(1), and 37, 15 U.S.C. §§ 1052(e)(1), 1064(1), and 1119.

appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendant to 'palm off his product as that of another.'" *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1216 (7th Cir. 1997). Each of these factors favors Little Caesars.

In considering the similarity of the marks factor, "we must keep in mind that the commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 848 (7th Cir. 2023) (internal citations omitted). Here, Little Caesars' mark CRAZY PUFFS is different in appearance, sound and meaning from Plaintiff's asserted designations. The dominant portion of the CRAZY PUFFS mark is CRAZY, which readily differentiates the mark from Plaintiff's alleged marks. *Hamilton Decl.* ¶22. As noted above, the term "Puffs" is disclaimed in the CRAZY PUFFS registration, justifying giving less weight to that word in determining likelihood of confusion. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1351 (Fed. Cir. 2011) (noting that "the word not disclaimed is generally regarded as the dominant or critical term" in assessing confusion). Moreover, the CRAZY PUFFS mark is consistently used in a context that prominently displays Little Caesars' other trademarks and trade dress elements, including the Little Caesars house mark and distinctive orange trade dress, which further weighs against any likelihood of confusion. Hamilton Decl. ¶12, Ex. D. The clear differences between the packaging, color, and labeling weigh strongly against any likelihood of confusion. *See Grubhub*, 80 F.4th at 847 (no consumer interacting with accused mark could reasonably believe that she was engaging with plaintiff, where accused mark prominently features defendant's brand name); *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 645 (7th Cir. 2001) ("All of [accused infringer's] products … prominently

10

display the well-known [mark], providing a strong indication that there is no likelihood of confusion.").[5]

The intent factor also militates strongly against any likelihood of confusion. There is no evidence that Little Caesars is attempting to "pass off" its products as having come from the Plaintiff. To the contrary, Little Caesars uses its own house mark and trade dress in marketing the CRAZY PUFFS product, and is leveraging its own goodwill in its CRAZY marks. Little Caesars has extensively utilized numerous CRAZY marks as a part of marketing and promotional efforts since 1986, and owns many registrations for its CRAZY marks. *Hamilton Decl.* ¶¶4-5, Ex. A. In addition, the fact that the parties sell their products through different trade channels also weighs heavily against any likelihood of confusion. While Plaintiff markets and sells its products through grocery stores, convenience stores, and third-party restaurants, Dkt. 2-2, Declaration of Thomas Maronick, ¶15, Little Caesars sells CRAZY PUFFS products exclusively through Little Caesars restaurant locations. Hamilton Decl. ¶26; Dkt. 1-2, Declaration of Andrew Shabaz, Ex. 17. As such, there is no overlap between the parties' trade channels.

Moreover, Plaintiff's assertions about alleged actual confusion are without merit. The claimed examples of confusion simply show that certain unidentified individuals made posts or comments online referring to pizza puffs as a generic name for the products, consistent with the generic use of the term in dictionaries, menus, recipes and other sources. Dkt. 2 at 9-10. This does not demonstrate source confusion under the Lanham Act. Further, Plaintiff admits that it has no knowledge as to who created the posts, and did not speak with or attempt to contact any of the individuals. Declaration of Jeff Handelman ("Handelman Decl."), Ex. B; *Great W. Air, LLC v. Cirrus Design Corp.,* 649 F.Supp.3d 965, 983 (D. Nev. 2023) (court cannot speculate that social

---

[5] *See also, Sullivan v. CBS Corp.*, 385 F.3d 772, 778 (7th Cir. 2004) ("Although the marks are similar, the prominent display of different names on the marks reduces any likelihood of confusion.").

media posters were actually confused without information about the individuals and their intent). Nor is there any evidence of any diversion of business. In short, the alleged evidence of actual confusion is not probative and falls short. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 704 & n.12 (7th Cir. 2014) (rejecting claim of actual confusion based on Internet searches of plaintiff's mark that returned search results relating to defendant); *Sullivan*, 385 F.3d at 772 (rejecting claim of actual confusion based on Internet searches of plaintiff's mark that retrieved web sites relating to both plaintiff and defendant).[6]

Finally, the "strength" factor weighs heavily against a finding of infringement. "The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 684 (7th Cir. 2001). As explained above, Plaintiff's asserted marks are neither inherently nor actually distinctive, being the subject of widespread generic use in menus, recipes, dictionaries and other sources. If protectable at all, they are extremely weak, which likewise weighs strongly against any likelihood of confusion. In sum, Plaintiff has clearly not met its burden to establish a likelihood of confusion.

### 3. Little Caesars' Use of the Phrase "4 Hand-Held Pizza Puffs" Is Non-Trademark Fair Use

The Lanham Act provides several affirmative defenses to a trademark infringement claim, including the fair use defense. *See* 15 U.S.C. § 1115(b). The fair use defense is available even as to incontestable registrations. *See Sportfuel*, 932 F.3d at 595. To prevail on the fair use defense, a defendant must show that (1) it did not use the term in question as a trademark, (2) the use is

---

[6] *See also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:16 (5th ed. 2024) ("[W]hile enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion."); *see also* Restatement (Third) of Unfair Competition § 23 (1995) ("Evidence of inquiries by customers as to whether the plaintiff and the defendant are associated ... may not establish the existence of actual confusion if the nature of the inquiries indicates that consumers perceive a difference between the designations and are skeptical of the existence of a connection between the users.").

descriptive of its goods, and (3) it used the term fairly and in good faith. *Id.* Little Caesars' use of the phrase "4 Hand-Held Pizza Puffs" satisfies all of these elements.

Notably, the phrase "4 Hand-Held Pizza Puffs" is used in a subordinate manner in a context that prominently displays Little Caesars' other trademarks and trade dress elements, including the Little Caesars house mark and/or the Roman Man character, the CRAZY PUFFS mark, and the distinctive orange trade dress. *Hamilton Decl.* ¶24; *see also* Dkt. 1-2, Ex. 17 at 34 and Ex. 21 at 42. Little Caesars never uses the term "Pizza Puffs" alone—it is always used as part of the informational phrase "4 Hand-Held Pizza Puffs." *Id.* The phrase is used in good faith in a non-trademark manner to denote the type of product that is in the package, consistent with the dictionary definitions, restaurant menus, recipes, and other generic evidence discussed above. *Id.* Nothing about Little Caesars' use of the phrase in this manner suggests that consumers would view the phrase as a source indicator. *See SportFuel*, 932 F.3d at 598 (holding that use of a slogan almost as a "subtitle" to a house mark was fair use as a matter of law); *Sorensen v. WD-40 Co.*, 792 F.3d 712, 725 (7th Circ. 2015) (holding that subordinate, non-trademark use of a term is fair use as a matter of law).

Notably, when Plaintiff was trying to register its Pizza Puffs mark, it represented to the USPTO that granting a registration would not deprive other companies of generic or descriptive terminology. Specifically, it stated: "All that [Iltaco] seeks to do is to prevent others from using PIZZA PUFFS as a trademark or confusingly similar mark" and that it "would not prevent others from using proper descriptive terminology, as descriptive terminology, to describe the manner in which their goods may be offered, advertised, or sold." Handelman Decl. Ex. C, page C-144. Plaintiff's claims in this case contradict those prior representations.

### B. Plaintiff Has Not Satisfied the Remaining Preliminary Injunction Factors

Nor has Plaintiff satisfied the remaining preliminary injunction factors. Plaintiff has not satisfied the irreparable harm requirement because it has not established a likelihood of success on the merits of its trademark infringement claim. 15 U.S.C. § 1116. Plaintiff's delay in filing the motion after learning of the CRAZY PUFFS product also weighs against its claim of irreparable harm. *See* Dkt. 2 at 1; Handelman Decl. ¶¶ 2-3; *see, e.g., Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 955 (N.D. Ill. 2018) (no irreparable harm where plaintiff delayed filing its trademark infringement suit for three months after sending cease and desist letter); *Ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14 C 6993, 2014 WL 5420273, at *8 (N.D. Ill. Oct. 23, 2014) (no irreparable harm where plaintiff waited four and a half months before filing its motion for a preliminary injunction).

Further, the balance of harms weighs heavily in favor of Little Caesars. Using a sliding scale approach, the Court must balance the potential harm to Plaintiff if a preliminary injunction is not granted against the harm that Little Caesars would suffer if a preliminary injunction is granted, where "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Valencia*, 883 F.3d at 966. As discussed in the Declaration of Greg Hamilton, if the requested preliminary injunction is granted, Little Caesars stands to suffer significant monetary losses covering destruction of existing materials, replacement with new materials, reshooting television commercials, revising digital marketing materials, and introduction of a new mark, plus a substantial decline in sales until a new brand could be introduced, along with substantial harm to Little Caesars' reputation and goodwill. Hamilton Decl. ¶¶ 27-32. This harm far exceeds the speculative harm asserted by Plaintiff.

14

Lastly, a preliminary injunction would not serve the public interest. There is a strong public policy in favor of the free and open use of generic and highly descriptive terms. As one court explained, the adoption of a generic or descriptive term as a trademark undermines public policy, because "granting one merchant a monopoly over the use of descriptive marks tends unfairly to prevent competing merchants from employing appropriate descriptive terms in their marketing." *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 100 (2d Cir. 2001). *See also Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 148 (2d Cir. 2003) (granting exclusiveness in a generic or descriptive term "would tend to diminish the access of others to the full range of discourse relating to their goods."). Denial of the present motion will therefore promote the public interest.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully Submitted,

LC TRADEMARKS, INC. and
LITTLE CAESAR ENTERPRISES, INC.

Date: August 23, 2024                By:   / Fan Cheng/
                                     Jeffery A. Handelman
                                     Virginia Marino
                                     Fan Cheng
                                     Crowell & Moring LLP
                                     455 N. Cityfront Plaza Drive
                                     NBC Tower – Suite 3600
                                     Chicago, Illinois 60611
                                     (312) 321-4200

                                     Attorneys for LC Trademarks, Inc. and Little
                                     Caesar Enterprises, Inc.

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed and served to all counsel of record via the Court's CM/ECF system.

DATED: August 23, 2024           By: _____/Fan Cheng/_____

                                 Jeffery A. Handelman
                                 Virginia Marino
                                 Fan Cheng
                                 Crowell & Moring LLP
                                 455 N. Cityfront Plaza Drive
                                 NBC Tower – Suite 3600
                                 Chicago, Illinois 60611
                                 (312) 321-4200

                                 Attorneys for LC Trademarks, Inc. and
                                 Little Caesar Enterprises, Inc.