UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS TAMALE COMPANY, INC., Plaintiff<br><br>v.<br><br>LC TRADEMARKS, INC. and LITTLE CEASAR ENTERPRISES, INC., Defendants | No. 24-cv-05210<br><br>Judge Jeremy C. Daniel |

## ORDER

The plaintiff's motion for a preliminary injunction [2] is denied in part and granted in part. The Court hereby enjoins the defendants' use of the "PIZZA PUFFS" mark. To the extent necessary, the parties shall confer and submit a proposed preliminary injunction order to the Court's proposed order inbox on or before December 23, 2024. The Court denies the plaintiff's motion as to the defendants' use of the "CRAZY PUFFS" mark. The Court further denies the plaintiff's motion to strike [22]. The parties shall meet, confer, and file a proposed scheduling order on or before January 8, 2025. Status hearing is set for January 15, 2025, at 9:30 a.m.

## STATEMENT

The plaintiff seeks a preliminary injunction that prevents the defendants from using the "infringing marks," which the plaintiff identified as "CRAZY PUFF" and "PIZZA PUFFS." According to the plaintiff, the defendants' use of "CRAZY PUFF" and "PIZZA PUFFS" infringes two of the plaintiff's registered trademarks. Specifically, the plaintiff contends that the defendants infringe the plaintiff's "PIZZA PUFFS" mark, which has become incontestable, and the plaintiff's "PUFF" mark, which has not become incontestable.

"A preliminary injunction may be granted where a movant shows that it is likely to succeed on the merits of its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023). "[T]o succeed on a trademark infringement claim, the claimant must show that it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark. *Id.* at 844. "In the context of trademark law, once the movant establishes a likelihood of success on the merits, it is statutorily entitled to a rebuttable presumption of irreparable harm." *Id.* (citing 15 U.S.C. §

1116(a)). If the movant meets these requirements, then the Court considers whether the balance of equities tips in the movant's favor and whether injunctive relief is in the public interest. *Id.* at 844; *see also Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1188 (7th Cir. 2023).

## I. "PIZZA PUFFS"

Rather than follow the parties' lead and conflate the marks at issue, the Court will assess each mark separately. The parties agree that the plaintiff's "PIZZA PUFFS" mark is incontestable. "Although an incontestable mark may be enforced even if it is descriptive, it is subject to cancellation if it is or becomes generic." *TE-TA-MA Truth Foundation—Family of IRI, Inc. v. World Church of the Creator*, 297 F.3d 662, 665 (7th Cir. 2002). "A mark is 'generic' when it has become the name of a product (e.g., 'sandwich' for meat between slices of bread) or class of products (thus 'church' is generic)." *Id.* at 666.

According to the defendants, the plaintiff's "PIZZA PUFFS" mark is generic. Generic terms ordinarily do not qualify as trademarks. *United States Patent and Trademark Office v. Booking.com B.V.*, 591 U.S. 549, 553 (2020). A generic term is simply the commonly used name for the good or service itself. *See id.* at 554; *see also H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 761 (7th Cir. 2007). There is no evidence in the record that the term "PIZZA PUFFS" was the commonly used name of a product at the time the plaintiff first used the term in 1976 in connection with its product, a flour tortilla filled with ingredients typically found on a pizza (i.e. meat, cheese, and sauce). As such, the "PIZZA PUFFS" mark is not, on its face, generic. Because the mark is incontestable, and because it is not generic, it may be enforced wherever it falls on the distinctiveness spectrum.

That is, unless the mark has become generic. "To determine that a trademark is generic and thus pitch it into the public domain is a fateful step." *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 531 (7th Cir. 2003). "The fateful step is not taken until the trademark has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Id.*

According to the defendants, evidence that restaurant menus use "PIZZA PUFFS" to describe products, the U.S. Patent and Trademark Office's use of the term, the plaintiff's use of the term in its cooking instructions, and consumer survey evidence showing that more than 80% of consumers surveyed view the term as generic, establish that the plaintiff's "PIZZA PUFFS" mark has become generic. While the defendants' survey evidence is compelling, it is not conclusive. *See Ty Inc.*, 353 F.3d at 531 (noting, in dicta, that as few as 10% of consumers associating a mark with an owner's brand could result in consumer confusion). Importantly, the plaintiff has met the defendants' evidence with several examples of other brands being able to compete effectively without using the plaintiff's "PIZZA PUFFS" mark to describe similar

2

products. This evidence calls in question whether "the trademark has gone so far toward becoming the exclusive descriptor of the product," as the defendants contend. Accordingly, the defendants have not established a likelihood of success on their claim that the plaintiff's "PIZZA PUFFS" mark is generic. Because they have not done so, and because the plaintiff has provided evidence of its registered, incontestable "PIZZA PUFFS" mark, the Court finds that the plaintiff is likely to succeed in establishing that it has a valid and protectable mark.

## II. "PIZZA PUFFS" AND "PIZZA PUFFS"

Courts consider seven factors when determining whether there is a likelihood of confusion, that is, whether consumers who might purchase either product would likely attribute them to a single source: (1) similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the senior user's mark; (6) existence of actual confusion; and (7) the intent of the defendant to "palm off" its product as that of another. *Grubhub Inc.*, 80 F.4th at 847. Here, the marks are identical; they are used on similar products and sold in similar channels of commerce; customers are likely to exercise little care; and the plaintiff's mark, which is incontestable, is strong. While the plaintiff submitted various social media postings that purport to show actual confusion, this is not competent evidence. The plaintiff has not established that such evidence is reliable or admissible. Further, some of the evidence suggests no confusion; for instance, one post notes "that's not a pizza puff." Even so, the plaintiff has shown that it is likely to succeed in showing a likelihood of confusion between its "PIZZA PUFFS" mark and the defendants' use of "PIZZA PUFFS."

By statute, there is a rebuttable presumption of irreparable harm once the movant establishes a likelihood of success on the merits. 15 U.S.C. § 1116(a). The defendants have done nothing to rebut this presumption other than argue that the plaintiff delayed in seeking injunctive relief. But the record shows that the plaintiff tried to enforce its marks once it learned of the defendants' "infringing marks." The Court will not penalize the plaintiff for sending the defendants a cease-and-desist letter and then attempting to resolve the matter short of litigation when there is no evidence of undue delay on the plaintiff's part. As for the balance of equities, they favor the plaintiff. While the defendants have invested heavily in their advertising campaign, their use of the "PIZZA PUFFS" mark has been minimal and does not appear to be the focus of their marketing. More importantly, the plaintiff has used their "PIZZA PUFFS" mark since 1976, which offsets the defendants' recent investments in their use of the mark.

Further, the defendants' use of "PIZZA PUFF" is not a fair use. Fair use allows one to use a mark that is "descriptive of and used fairly and in good faith only to describe the goods or services of such party." *SportFuel, Inc. v. PepsiCo, Inc.* 932 F.3d 589, 595 (7th Cir. 2019). The party invoking the fair use defense must show (1) it did not use

3

the mark as a trademark, (2) the use is descriptive of its goods, and (3) the mark is used fairly and in good faith. *Id*. The defendants have not shown that "PIZZA PUFFS" is descriptive of their goods. The defendants product looks like a mini-pizza or a pizza muffin or a pizza cupcake or a pizza bite. It is not apparent what part of the defendants' product is a puff, which means that the mark is not descriptive of the defendants' goods. Therefore, the defendant's fair use defense fails.

For these reasons, the Court grants the plaintiff's motion as to the defendants use of the "PIZZA PUFFS" mark. The defendants shall stop using the term "PIZZA PUFFS" immediately.

### III. "PIZZA PUFFS' AND "CRAZY PUFFS"

The Court finds that the plaintiff has not met its burden with respect to the defendants' use of the "CRAZY PUFFS" mark. While both marks include the word "PUFF," the Court must consider the mark as a whole. *See Booking.com*, 591 U.S. at 556 ("for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation."); *see also Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1161 (7th Cir. 1996) ("We have recognized in the past that the genericness of composite terms must be evaluated by looking at the term as a whole."). Viewed as a whole, "PIZZA PUFFS" and "CRAZY PUFF" are different. One need only look at the plaintiff's family of marks to appreciate the difference. The plaintiff's marks describe what one would find in the product. Whether "pizza," "pulled pork," "spinach & Cheese," or something else, the plaintiff's marks combine a descriptor with the word "PUFF." In contrast, the defendants use the word "Crazy," which sets it apart from the plaintiff's "PIZZA PUFFS" mark and ties it to the defendants' "CRAZY" family of marks. While some of the factors discussed above favor the plaintiff, that is, the products are similar and sold in similar channels of commerce with consumers who exercise a low degree of care, the difference in the marks' overall impression precludes finding a likelihood of success by the plaintiff on likelihood of confusion. Therefore, the Court denies the plaintiff's motion as to the defendants' use of the "CRAZY PUFF" mark.

### IV. "PUFF"

The parties agree that the plaintiff's "PUFF" mark is not yet incontestable. The defendants argue that the mark is or has become generic. The plaintiff argues that it is descriptive or suggestive. These arguments stem from the distinctiveness scale, which has five categories: generic, descriptive, suggestive, arbitrary, and fanciful. *Booking.com*, 591 U.S. at 553. A generic term is simply the commonly used name for the good or service itself. *See id*. at 554; *see also H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 761 (7th Cir. 2007). Generic terms ordinarily do not qualify as trademarks. *Booking.com*, 591 U.S. at 553.

4

Descriptive terms do a bit more as they identify a characteristic of a particular product or service. *H-D Michigan*, 496 F.3d at 761. "A mark is descriptive when it describes the product category to which the brand belongs. Descriptive phrases refer to a characteristic of the product." *SportFuel, Inc.* 932 F.3d at 599 (citation and quotations omitted). Once descriptive terms acquire secondary meaning, they are eligible for federal trademark registration. *Booking.com*, 591 U.S. at 553; *SportFuel, Inc.*, 932 F.3d at 598.

Courts at times look to dictionaries as a source of evidence on genericness. *See*, *e.g.*, *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1158 (7th Cir. 1996). The relevant definition of puff here is "a light round hollow pastry." *See* https://www.merriam-webster.com/dictionary/puff (last visited December 17, 2024). The plaintiff's products are not that. Rather, they are filled dough-based products. This indicates that "PUFF" is not generic as to the plaintiff's products.[1]

At a minimum, the plaintiff's "PUFF" mark is descriptive. As a registered mark, secondary meaning is presumed. *Packman*, 267 F.3d at 638. The defendants have failed to rebut this presumption.

Instead, the defendants focused on evidence they contend shows that "PUFF" has become generic. That evidence consists of restaurant menus that use the term to describe its products, the U.S. Patent and Trademark Office's use of the term, the plaintiff's use of the term in its cooking instructions, and consumer survey evidence showing that more than 80% of consumers surveyed view the term as generic. As discussed above, this evidence is inconclusive. Therefore, the Court finds that the plaintiff has shown that its "PUFF" mark is likely valid and protectable.

### V. "PUFF" AND "CRAZY PUFFS"

Here, the first likelihood of confusion factors favor the defendants. "When evaluating a mark, we must keep in mind that '[t]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail.'" *Grubhub Inc.*, 80 F.4th at 848. "CRAZY PUFFS" creates a different commercial impression than "PUFF" alone because it implies something more, particularly when presented with the defendants' trade dress.

The products are somewhat similar in that they are dough-based, pizza-inspired handheld foods, but "CRAZY PUFFS" have an open-top exposing its filling whereas a "PUFF" fully encloses its filling. This factor is neutral.

---

[1] The same is true of the defendants' products; that is, the defendants products are not light, round, hollow pastries. As such, the Court rejects the defendants' suggestion that they must use "PUFF" to describe their product.

Both parties use their respective marks in the same channels, which favors the plaintiff. And each parties' products are low-cost, which suggests a low degree of consumer care. This also favors the plaintiff.

The plaintiff has not shown that the "PUFF" mark is strong. While the plaintiff has used "PUFF" in connection with its products since 1976, those uses were as part of compound terms. Much of the evidence the plaintiff points to as evidence of the strength of its marks refer to "PIZZA PUFFS" and not just "PUFF." This factor favors the defendant.

The plaintiff also has not shown actual confusion. The defendants' point concerning the plaintiff's reliance on social media posts to show actual confusion is well-taken. That is not competent evidence. As a result, this factor favors the defendant.

Finally, the plaintiff concedes that it has no evidence that the defendant intended to palm off its product as the plaintiff's. Even so, the plaintiff has expressed a concern about reverse confusion, which considers whether the junior user attempted to usurp the senior user's mark. *See Grubhub Inc.*, 80 F.4th at 851. The plaintiff presented evidence that the defendant has expended significant sums to advertise its products nationally in, according to the plaintiff, an attempt to create reverse confusion. *See, e.g., Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649, 659 (7th Cir. 2019) (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992)). Reverse confusion may support an inference of bad faith on the junior user's part. *See id.*

Even if one to view the defendants' actions as bad faith conduct, the commercial impressions of "PUFF" and "CRAZY PUFF" are too different to warrant a finding that the plaintiff is likely to establish a likelihood of confusion. When one considers that the "PUFF" mark is not strong and that the plaintiff failed to present any competent evidence of actual confusion, the Court denies the plaintiff's motion based on the defendants' alleged infringement of the "PUFF" mark.

## VI. MOTION TO STRIKE

The plaintiff's motion to strike is denied as moot. The Court did not rely on the material identified in the motion to strike in reaching its decision.

Date: December 19, 2024

JEREMY C. DANIEL
United States District Judge